## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

---------------------------------------------------------- :

ANTHONY BONTATIBUS           :      CIVIL ACTION NO. 3:03CV00948(JCH)

       Plaintiff,                :

                                    :

V.                                        :

                                      :

DUNCAN AYR,                     :
and TOWN OF BRANFORD         :

                                      :

       Defendants.             :      NOVEMBER 1, 2004

--------------------------------------------------- :

## **DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Pursuant to Rule 56 of the Federal Rules of Civil Procedure and Local Rule 56, Defendants

Duncan Ayr ("Detective Ayr") and the Town of Branford (the "Town") respectfully move for

summary judgment on the Plaintiff's Complaint based upon the undisputed facts and the doctrine of

qualified immunity. As is more fully set forth in the accompanying Memorandum of Law, Statement

of Undisputed Facts, affidavits and supporting documents, Detective Ayr is entitled to judgment as a

matter of law on the Plaintiff's Complaint, as no genuine issues of material fact exist.

In particular, the Plaintiff was arrested pursuant to a warrant signed by a neutral magistrate,

which creates a presumption of probable cause for the arrest. Since probable cause is a complete

defense against the Plaintiff's malicious prosecution claims, Detective Ayr is entitled to summary judgment.

Furthermore, Detective Ayr is shielded by the doctrine of qualified immunity because there was probable cause, or at least arguable probable cause, for the Plaintiff's arrest. In addition, Detective Ayr is entitled to summary judgment because the Plaintiff cannot show that his prosecution was begun with malice or that the matter ended in his favor.

The Town is entitled to summary judgment because there was no constitutional violation by Detective Ayr, which is a prerequisite to the Plaintiff's claim that the Town failed to adequately train Detective Ayr. In addition, the Plaintiff has not produced any evidence of a deficient training program that is causally related to any alleged infringement of the Plaintiff's rights.

**WHEREFORE**, the defendants Duncan Ayr and the Town of Branford respectfully request summary judgment on the Plaintiff's entire Complaint.

DEFENDANTS,
DUNCAN AYR and TOWN OF BRANFORD


By:_____
     JAMES N. TALLBERG, ESQ.
     Federal Bar Number Ct17849
     UPDIKE, KELLY & SPELLACY, P.C.
     One State St., P.O. Box 231277
     Hartford, CT 06123-1277
     Tel. No. (860) 548-2600
     Jtallberg@uks.com

377702

## <u>CERTIFICATION</u>

THIS IS TO CERTIFY that a copy of the foregoing, has been sent via U.S. certified mailed, postage prepaid, this ___ day of November, 2004, to the following parties:

Norman A. Pattis, Esq.
Williams & Pattis, LLC
51 Elm Street, Suite 409
New Haven, CT 06510.


By:_____
    JAMES N. TALLBERG, ESQ.
    Updike, Kelly & Spellacy, P.C.

377702

3

## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| ANTHONY BONTATIBUS | : | CIVIL ACTION NO. 3:03CV00948(JCH) |
| Plaintiff, | : | |
| | : | |
| V. | : | |
| | : | |
| DUNCAN AYR, | : | |
| and TOWN OF BRANFORD | : | |
| | : | |
| Defendants. | : | NOVEMBER 1, 2004 |
| | : | |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Pursuant to Rule 56 of the Federal Rules of Civil Procedure and Local Rule 56, Defendants Duncan Ayr ("Detective Ayr") and the Town of Branford (the "Town") respectfully submit this memorandum of law in support of their Motion for Summary Judgment.

## I.    INTRODUCTION

On a cold Thanksgiving Day, November 28, 1996, when no customers were in his store, a business owned by Plaintiff Anthony "Gene" Bontatibus, Sr. ("Plaintiff"), mysteriously caught fire and burned to the ground, within approximately one half hour after he left the building. Tragically, a volunteer fireman lost his life bravely fighting the fire. There was abundant evidence leading

377702

investigators to conclude that the Plaintiff had committed arson.  Most notably, the Plaintiff was the last person in the building within minutes of the Fire starting and investigators were able to quickly rule out natural gas or electrical appliances as possible causes.  Instead, accelerants were detected along with tell tale burn patterns suggesting that flammable liquid was poured to quickly spread the Fire.  In addition, the Plaintiff's business was declining and he was in arrears to both the state and federal government for back taxes.

After an investigation spanning more than three months that involved seasoned arson investigators from both state and federal agencies, along with the New Haven State's Attorney's Office, Detective Ayr presented an Arrest Warrant Application to a Judge of the Superior Court, who found probable cause.  Plaintiff was arrested and tried three times.  The Plaintiff was never acquitted; instead, after a mistrial and two deadlocked juries, the State's Attorney declined to pursue a fourth trial.

Because there was an abundance of evidence that supported a finding of probable cause, and for the following reasons, Detective Ayr and the Town are entitled to summary judgment.

## II.    FACTUAL BACKGROUND

### A.    THE UNDISPUTED FACTS

#### 1.    The Thanksgiving Day Fire

On Thanksgiving Day, November 28, 1996, a business known as Bontatibus Floors & More operated at 43 School Ground Road.  Complaint, ¶¶6-7; Answer, ¶¶6-7.  At that time, the Plaintiff was the principal owner of Bontatibus Floors & More.  Id., ¶6.  At all times relevant to the complaint in this action, Detective Ayr was a member of the Branford Police Department acting in his capacity as a member of said Department.  Complaint, ¶4; Answer, ¶4; Exhibit A (Affidavit of Duncan Ayr of 10/29/04, ¶3) ("Ayr Aff.").  On November 28, 1996, at approximately 4:24 p.m., a 911 call was received by Branford emergency services indicating that there was a fire at 43 School Ground Road, Branford, Connecticut (the "Fire").  Exhibit B (Deposition of Anthony Bontatibus of 6/10/04 at 24 [Volume I]) ("Pl.'s Dep. Tr.").[1]  After the Fire was reported, Branford firefighters responded to the blaze.  Complaint, ¶7; Answer, ¶7.  In the course of putting out the Fire, one Branford firefighter, Edward Ramos, was killed.  Complaint, ¶8; Answer, ¶8.

#### 2.    The Fire Investigation

The Branford Police Department thereafter conducted an investigation into the facts and circumstances surrounding the Fire and the death of Edward Ramos.  Complaint, ¶9; Answer, ¶9.

---

[1]  The transcript from the continuation of Plaintiff's deposition on 8/6/04 [Volume II] is attached as Exhibit C.

The investigation of the Fire was jointly conducted by the Branford Police Department, the Office of the State Fire Marshal, the New Haven State's Attorney's Office, and the Bureau of Alcohol, Tobacco and Firearms ("ATF").  Ayr Aff., ¶8; Exhibit A3 (Dearington letter to Galvin of 1/8/97).

Detective Sergeant William Carroll was the officer in charge of the Fire investigation for the Branford Police Department.  Ayr Aff., ¶9.  Detective William L. Lewis was the officer in charge of the State Fire Marshal's Investigation.  Ayr Aff., ¶10.  Special Agent Wayne Miller was the officer in charge of the ATF's investigation of the Fire.  Ayr Aff., ¶11.  Michael Dearington was in charge of the New Haven State's Attorney's investigation of the Fire.  Ayr Aff., ¶12.

Detective Lewis prepared a written report concerning his actions regarding the Fire investigation, dated, December 10, 1996, No. P-96-01611-3, a copy of which was filed with the Branford Police Department.  Ayr Aff., ¶13.  A genuine copy of Detective Lewis's December 10, 1996 Report is attached hereto as Exhibit A1.  Ayr Aff., ¶14.  Special Agent Miller prepared a written report concerning his actions regarding the Fire investigation, dated December 11, 1996, No. 741407-97-0012, a copy of which was filed with the Branford Police Department.  Ayr Aff., ¶16.  A genuine copy of Special Agent Miller's December 11, 1996 Report is attached hereto as Exhibit A2.  Ayr Aff., ¶17.

As part of their investigation of the Fire, members of the Branford Police Department, assisted by personnel from other law enforcement agencies, interviewed approximately 40 witnesses.

Ayr Aff., ¶20.  A copy of the index of witness statements taken by law enforcement personnel as part

of the Fire investigation is attached hereto as Exhibit A4.  Ayr Aff., ¶21.[2]  On November 28, 1996,

members of the Branford Police Department took written statements from the Plaintiff and his son,

Gene, Bontatibus, Jr.  Pl.'s Dep. at 29.  Copies of the November 28, 1996 written statements of the

Plaintiff and Mr. Bontatibus, Jr. are attached hereto as Exhibits A5 and A6.  Ayr Aff., ¶23; Pl.'s Dep.

Tr. at 29

On November 29, 1996, as part of their investigation, the Branford Police had the Plaintiff

sign a consent to search form, a genuine copy of which is attached hereto as Exhibit A7.  Pl.'s Dep.

Tr. at 49.[3]  On November 30, 1996, members of the State Fire Marshal's Office took written

statements from the Plaintiff and Mr. Bontatibus, Jr.  Ayr Aff., ¶25; Pl.'s Dep. Tr. at 37-38.  Copies

of the November 30, 1996 written statements of the Plaintiff and Mr. Bontatibus, Jr. are attached

hereto as Exhibits A8 and A9.  Ayr Aff., ¶26; Pl.'s Dep. Tr. at 37-38.

In his November 28, 1996 statement, Plaintiff stated that on the morning of the Fire, he shut

off the gas valve outside the building at Bontatibus Floors & More.  Pl.'s Dep. Tr. at 27; 11/28/96

---

[2]  Samples of these witness statements and interview reports, including the Plaintiff's two written statements, two given
by his son, and those taken by Detective Ayr, are attached hereto as Exhibits A5, A6, A8, A9, A10, A12, A13, A14, A15,
and A16.  The index of witness statements is submitted to demonstrate the breadth of the Fire Investigation without
burdening the Court with all of the voluminous witness statements, many of which contain inadmissible and irrelevant
hearsay.
[3]  The Consent to Search form specifically states that it authorized Members of the Branford Police Department as well
as the Connecticut State Police, Fire Marshal's Office, to search the Plaintiff's business – an indication that the State Fire
Marshal was involved in determining the cause and origin of the Fire at the very earliest stage of the investigation.

Statement at 3.  Plaintiff also indicated that he shut off all the heat and electrical switches that operated fans and furnaces inside the building.  Id.  He also stated that he smelled gas, so he opened doors at Bontatibus Floors & More in an attempt to air the place out.  Id.  He also told the police that, on the day of the Fire, he left Bontatibus Floors & More at approximately 11:30 a.m., and returned at approximately 2:45 p.m.  Id.  He also stated that, on the day of the Fire, his son was with him at Bontatibus Floors & More for part of the time, and that the Plaintiff left the business between approximately between 3:30 and 3:45, after his son left.  Id.; see also Pl.'s Dep. Tr. at 31.[4] Ayr Aff., ¶32.

When the firefighters initially arrived at the scene all doors and windows were secure.  Pl.'s Dep. Tr. at 137.  The law enforcement personnel who investigated the Fire found no evidence of burglary.  Pl.'s Dep. Tr. at137-138.

On December 1, 1996, members of the Branford Police Department executed search and seizure warrants at both Bontatibus Floors & More at 43 School Ground Road and the Plaintiff's residence at 155 Northford Road.  Ayr Aff., ¶35; Pl.'s Dep. Tr. at 60-61.  Between December 2, 1996 and December 10, 1996, additional warrants were executed at the People's Bank and New Haven

---

[4]  Subsequently, in litigation against his insurer in which the Plaintiff sought to recover insurance proceeds as a result of the Fire, Plaintiff was forced to admit that he was at the business closer to 4:00 p.m., which places him on the scene approximately one half hour, or less, from when the Fire was called into 911 at 4:24 p.m.  See Exhibit D (Pl.'s testimony in Bontatibus Floors, v. Hartford Fire Ins., No. CV98-0420255S of 2/19/04 at 100-102 (testifying that he left building at "[o]h, four o'clock, you know, that area.  Yeah."

Savings Bank for records related to both the Plaintiff and his business. Ayr Aff., ¶36; Pl.'s Dep. Tr. at 60-61.

### 3.    The Office of the State Fire Marshal and ATF Suspect Arson

Members of the Fire Marshal's Office concluded that the fire started in the kitchen area on the north side of the structure, near an office area. Ayr Aff., ¶37. The Fire Marshal's investigation also eliminated all other possible ignition and heat sources, including natural gas and electricity, which may have resulted in starting the Fire. Ayr Aff., ¶38. As part of the investigation, employees of the Southern Connecticut Natural Gas Company, along with Detective Michael Smarz, tested the gas line from the street to the structure that burned down, along with the buildings' natural gas meter and regulator and they concluded that there were no gas leaks. Ayr Aff., ¶39. A genuine copy of Detective Smarz's Continuation of Investigation Report, No. P96-016113, dated December 10, 1996, with related witness statements from Southern Connecticut Gas Company employees Michael P. Corolla and Glenn R. Smith, Sr., is attached hereto as Exhibit A10. Ayr Aff., ¶40.[5]

As part of the investigation, electrical consultant Joseph Cristino, Professional Engineer, examined and eliminated all possible electrical sources as the ignition source of the Fire. Ayr Aff.,

---

[5] As indicated in Detective Smarz's December 10, 1996 Report, No. P96-016113, on November 29, 1996, he observed employees of the Southern Connecticut Gas Company test the service line to the Plaintiff's building, and on December 5, 1996, the gas regulator and meter removed from the business. These tests revealed that there was no gas leak and that the service line, pressure regulator and gas meter all functioned properly. Since the Plaintiff swore in his written statement that he shut the natural gas supply off before the fire, this potential cause was eliminated. See Exhibits A5, A8 and A10.

¶41.    A genuine copy of Mr. Cristino's Report, dated December 3, 1996, a copy of which was filed with the Branford Police Department, is attached hereto as Exhibit A11.  Ayr Aff., ¶42.

Detective Lewis of the Office of the State Fire Marshal concluded that there was an unusual burn pattern on the floor of the kitchen area and ceramic tile room.  Ayr Aff., ¶43.  Detective Lewis further concluded that the burn pattern is usually found at fire scenes where an ignitable liquid has been introduced (poured) in an attempt to speed the spread of fire and to move it from one location to another.  Ayr Aff., ¶44.  Detective Lewis further reported that an analysis by the Connecticut State Police Forensic Lab of evidence gathered at the Fire scene revealed the presence of medium boiling range petroleum distillate (flammable liquids).  Ayr Aff., ¶45.

On November 30, 1996, Detective Lewis concluded that the Fire was of human design and was intentionally set as a direct result of an intentional act of arson.  Ayr Aff., ¶46.  Detective Lewis concluded that a natural gas explosion was ruled out as a cause of the fire, since all evidence found proved inconsistent with such a type of explosion.  Ayr Aff., ¶47.  Special Agent Miller of the ATF also concluded that the fire was intentionally set.  Ayr Aff., ¶48; Pl.'s Dep. Tr. at 58.

### 4.    The Plaintiff had Motive and Opportunity

Robert A. Brosseau and Vickramjit Sharma who are Forensic Fraud Examiners for the State of Connecticut Division of Criminal Justice examined records seized from the Plaintiff and his business.  Ayr Aff., ¶49; Pl.'s Dep. Tr. at 61.  Messrs. Brosseau and Sharma prepared a written report

regarding their findings, dated December 17, 1996. Ayr Aff., ¶50. Messrs. Brosseau and Sharma performed financial analysis of the Plaintiff's business records for the calendar year 1996 from the beginning through the date of the fire. Ayr Aff., ¶52. Messrs. Brosseau and Sharma compared the Plaintiff's financial records for calendar years 1994 and 1995, with 1996. Ayr Aff., ¶53. Messrs. Brosseau and Sharma concluded that the 1996 gross sales of Bontatibus Floors & More, Inc., declined by 15% from that of the same time period for 1995. Ayr Aff., ¶54. Messrs. Brosseau and Sharma further concluded that, "[b]ased on . . . (their) examination and analysis, we conclude that the general business trends indicate a declining business environment at the time of the fire." Ayr Aff., ¶55; Pl.'s Dep. Tr. at 62.

As of January 31, 1997, the Plaintiff's business owed more than $64,655 in back taxes to the federal government. Ayr Aff., ¶56; Pl.'s Dep. Tr. at 62. At the time of the Fire, the Plaintiff's business owed back taxes to the State of Connecticut, Department of Revenue Services of approximately $23,000 and had entered into a payment plan to try to resolve that debt. Ayr Aff., ¶57; Pl.'s Dep. Tr. at 62. In 1992, approximately five years before the Fire, Plaintiff's business filed for Bankruptcy. Ayr Aff., ¶58; Pl.'s Dep. Tr. at 20.

### 5.    The Plaintiff Asserted his Fifth Amendment Privilege

On or about December 6, 1996, the Plaintiff retained counsel to represent him regarding the investigation of the Fire. Pl.'s Dep. Tr. at 46. Upon his retention of counsel, the Plaintiff asserted his

Fifth Amendment right against self incrimination. Pl.'s Dep. Tr. at 45-46. By letter dated December 6, 1996, Attorney Philip Russell informed the Branford Police Department, with a copy to New Haven State's Attorney Michael Dearington, that the Plaintiff "has been instructed not to answer any questions prior to consulting with [Attorney Russell] and we are therefore requesting that he not be contacted except in accordance with this request." Exhibit E (Russell letter to Branford Police Department of 12/6/96); Pl.'s Dep. Tr. at 46, 48 ("Q. And just so the record is clear, Sunday, November 30, 1996, was the last time that you were questioned by the police? A. That is correct.").

A genuine copy of Attorney Russell's letter dated December 6, 1996, is attached hereto as Exhibit E. Pl.'s Dep. Tr. at 46. On or about December 10, 1996, Mr. Bontatibus, Jr. retained Attorney Richard Brown to represent him. Pl.'s Dep. Tr. at 47. By letter dated December 10, 1996, Attorney Richard R. Brown informed the Branford Police Department that, "should any law enforcement agency have reason to speak to my client, please do not contact him directly; rather make any request through me." Exhibit F (Brown letter to Carroll of 12/10/96); Pl.'s Dep. Tr. at 47. A genuine copy of Attorney Brown's letter dated December 10, 1996 is attached hereto as Exhibit F. Pl.'s Dep. Tr. at 47. The Plaintiff was, of course, entitled to assert his Fifth Amendment right, but his failure to cooperate further deprived the investigators of any exculpatory evidence the Plaintiff may have been able to offer.

6.    **Detective Ayr Signs the Arrest Warrant Application**

On or about March 7, 1997, Detective Ayr signed an affidavit in support of an Application for Arrest Warrant (the "Arrest Warrant Affidavit"). Ayr Aff., ¶62; Pl.'s Dep. Tr. at 23-24. A genuine copy of the Arrest Warrant Affidavit is attached to Detective Ayr's Affidavit as Exhibit A17. Ayr Aff., ¶63; Pl.'s Dep. Tr. at 23-24. On or about March 7, 1997, the Arrest Warrant Affidavit was also signed by the State's Attorney for the Judicial District of New Haven, Michael Dearington. Ayr Aff., ¶64; Pl.'s Dep. Tr. at 23-24. In fact, Mr. Dearington assisted Detective Ayr with the preparation of the Arrest Warrant Affidavit. Ayr Aff., ¶65.

On or about March 7, 1997, the Arrest Warrant Application was presented to Connecticut Superior Court Judge Robert J. Devlin, who signed the Warrant. Ayr Aff., ¶66; Pl.'s Dep. Tr. at 23-24. Judge Devlin signed the Warrant under the section that reads:

> The foregoing Application for an arrest warrant, and affidavit(s) attached to said Application, having been submitted to and considered by the undersigned, the undersigned finds from said affidavits(s) that there is probable cause to believe that an offense has been committed and that the accused committed it and, therefore, **that probable cause exists for the issuance of a warrant for the arrest of the above-named accused**.

Arrest Warrant Application at 1 (emphasis added); Ayr Aff., ¶67; Pl.'s Dep. Tr. at 24.

In the Arrest Warrant Affidavit, Detective Ayr disclosed that the facts and circumstances stated in the Affidavit were based on personal knowledge and observations "as well as information received from other police officers acting in their official capacity and from official police reports

and statements made by prudent and credible witnesses." Arrest Warrant Affidavit, ¶1; Ayr Aff.,

¶68. Detective Ayr also stated that, on November 28, 1996, members of the State Police Fire

Marshal's Office arrived on the scene and their responsibility was to determine cause and origin of

the fire. Arrest Warrant Affidavit, ¶8; Ayr Aff., ¶69.

He also disclosed that the Plaintiff indicated in his statements to law enforcement that he

noted a "rotten egg" smell at Bontatibus Floors & More on the day of the Fire and that, on November

13, 1996, he had a contractor repair a broken gas line at the business. Arrest Warrant Affidavit, ¶10;

Ayr Aff., ¶70. This exculpatory evidence was considered by the investigators but was reasonably

discounted after the Southern Connecticut Gas Company tested the gas line, pressure regulator and

gas meter and concluded that there was no gas leak. See Exhibit A10.

Detective Ayr was not the lead investigator regarding the Fire investigation. Ayr Aff., ¶59.

Yet, between December 3, 1996 and December 9, 1996, Detective Ayr interviewed, or assisted other

law enforcement personnel with interviews, of at least 8 witnesses: Kenneth M. Barbour, Justin C.

Infantino, Timothy J. Judd, James A. Paul, Sr., James K. Kennedy, Albert I. Sheppard, Alice E.

McGuire and Marion H. McClellan. Ayr Aff., ¶60. Genuine copies of Detective Ayr's Case/Incident

Reports regarding these interviews, No. 96-20506, dated December 3, 1996 through December 9,

1996, are attached hereto as Exhibits A12 through A16. Ayr Aff., ¶61.

### 7.    The Plaintiff was Insured by The Hartford

On the date of the Fire, the Plaintiff's business was insured by The Hartford Insurance Company ("The Hartford"), with Policy No. 31 SBK GB3476, effective 11/6/96 to 11/5/97 (the "Policy").  Arrest Warrant Aff., ¶26; Ayr Aff., ¶71; Pl.'s Dep. Tr. at 62-63.  A genuine copy of the Policy is attached hereto as Exhibit A18.  Ayr Aff., ¶72.[6]  At all times relevant to the Complaint in this action, Martin White was employed by The Hartford.  Ayr Aff., ¶73.  In the Arrest Warrant Affidavit, Detective Ayr stated that, "according to Martin White, an agent of the Hartford Insurance Company, Bontatibus Floors & More was insured for $300,000 for its contents and $500,000 for business interruption."  Arrest Warrant Aff., ¶26; Ayr Aff., ¶74.

Mr. White, who was then a senior investigator for The Hartford, provided Detective Ayr with the insurance information and he relied on it in good faith, believing that Mr. White was a credible witness.  Ayr Aff., ¶75.  The information relied on by Detective Ayr concerning the amount of insurance coverage for this loss was later discovered to be incorrect.  Ayr Aff., ¶76.  Upon learning of this discrepancy, Detective Ayr brought it to the attention of his supervisor, Detective Sergeant Carroll and Mr. Dearington.  Ayr Aff., ¶78.

---

[6]  Exhibit A18 consists of the Policy and related underwriting and renewal materials that were provided to investigators by The Hartford.  At his deposition, the Plaintiff authenticated these documents, which were marked as Deposition Exhibit 12, and still bear that Exhibit label.  See Pl.'s Dep. Tr. at 82-83, 104, 112-113 ("Q. – for the period – this appears to be the policy period November 6, '96 to November 5, '97.  Is that your understanding of the policy that was – that applied to this fire?  A.  Yeah.").

Although after the Plaintiff was arrested the precise amount of insurance coverage became an issue in dispute, that did not affect the conclusion of Detective Ayr that there was probable cause for the charges against the Plaintiff. Ayr Aff., ¶79. Once the Plaintiff was arrested, the decision to prosecute the case rested with the State's Attorney's Office. Ayr Aff., ¶80. In fact, the Plaintiff has admitted that the State's Attorney added an additional charge for insurance fraud. Pl.'s Dep. Tr. at 102 ("Q. Duncan Ayr didn't charge you with that? A. No.").

The Plaintiff claims that, on the date of the Fire, he did not know how much insurance coverage he had. Pl.'s Dep. Tr. at 96-97. He further claims that, at some point, he became aware that the Policy provided coverage of approximately $124,000 for inventory, coverage for automobiles, and for other ancillary coverage. Id. at 97. Yet, in his discovery responses, Plaintiff claims that he was insured for "approximately $240,000." Exhibit H, No. 11. The Policy also provided coverage for "replacement cost" of the building where the Fire occurred, which is listed in the Policy as $462,000. Pl.'s Dep. Tr. at 110. In approximately August or September 2004, the plaintiff reached a settlement agreement with The Hartford regarding his insurance claim arising from the Fire. Pl.'s Dep. Tr. at 118-119. Despite several requests, the Plaintiff has not disclosed the amount of his settlement with The Hartford.

8.    **Detective Ayr's Training and Experience is Impeccable**

Detective Ayr graduated from the Connecticut Police Academy on or about April 13, 1978.

Exhibit G (Affidavit of Branford Police Chief Robert W. Gill of 10/29/04, ¶11) ("Gill Aff."). At the

time of the Department's investigation of the Fire, Robert W. Gill, the Town's current Police Chief,

was the Deputy Police Chief. Gill Aff., ¶3. As Deputy Police Chief, he also served as the

Department's Training Officer. Gill Aff., ¶4. At all times relevant to the complaint in this action,

Detective Ayr met all training requirements required by the Connecticut General Statutes in order to

be a duly authorized police officer. Ayr Aff., ¶83; Gill Aff., ¶10. He was last recertified as a police

officer on July 1, 2002, and had met all his recertification requirements prior to that. Gill Aff., ¶12.

In order to obtain his recertification, Detective Ayr was required to attend forty-five (45)

hours of training concerning firearms, rape crisis, human relations, police and the law, patrol

procedures, domestic violence and electives. Gill Aff., ¶13. In addition to the basic requirements

mandated by the Police Officer Standards and Training Council ("POST"), Detective Ayr underwent,

prior to the Fire investigation, the following additional training relevant to criminal investigations:

basic crime scene investigation, intermediate crime scene investigation, fingerprint techniques, crime

scene photography, crime scene video, advanced crime scene, physical significance of bloodstain

evidence, advanced latent fingerprints, State's Attorney's law enforcement training program, and

crime scene analyst. Gill Aff., ¶14. Detective Ayr is one of Branford's finest Detectives and he has

had a distinguished twenty-seven (27) year career with the Department. Gill Aff., ¶15.

Detective Ayr and the Branford Police Department relied on the expertise of the Office of the

State Fire Marshal and the ATF to determine the cause and origin of the Fire. Ayr Aff., ¶84; Gill

Aff., ¶8-9. At all times, Detective Ayr acted in good faith to discharge his duties as police officer.

Ayr Aff., ¶85. Detective Ayr has known the Plaintiff for years, since the Plaintiff was active

politically and owned a local business, and they have always had cordial relations. Ayr Aff., ¶86.

### 9.    The Plaintiff has not Produced Evidence to Support his Claims

The Plaintiff's claim that there were numerous misrepresentations of fact contained in the

Arrest Warrant Affidavit is basically limited to his claim that Detective Ayr exaggerated the amount

of insurance. Pl.'s Dep. Tr. at 64, 90. In his responses to the Defendants' First Set of Interrogatories,

the Plaintiff was asked to provide the factual basis for his claim that the Town demonstrated a

reckless indifference to the Plaintiff's constitutional rights and the Plaintiff responded as follows:

"Please see Complaint, ¶19. Failure to properly train police officers and fire officials in conducting

an investigation." Exhibit H (Pl.'s Resp. to Defs.' First Interrogs. & Req. for Produc. of Docs. of

3/29/04, No. 7.)

When asked to identify the facts that support the Plaintiff's claim that he was singled out for

retaliation for the death of Edward Ramos, Plaintiff responded as follows: "No one else was arrested.

The investigation started and ended with me.  People who called police on their own to tell of smelling gas were never called back.  No one else was questioned except my son." Id., No. 8.  When asked to identify the "numerous misrepresentations of fact" that the Plaintiff claims were contained in the Arrest Warrant Affidavit prepared by Detective Ayr, Plaintiff responded as follows: "Exaggeration of insurance, stated $800,000 in warrant.  In actuality, it was approximately $240,000, including 5 vehicles." Id., No. 9.

### 10.    The State's Attorney Decided not to Prosecute a Fourth Trial

The Plaintiff was never acquitted of the criminal charges against him.  Instead, the State's Attorney decided, after one mistrial and two deadlocked juries, to not further prosecute the case.  Ayr Aff., ¶81.  Pursuant to Connecticut General Statutes §54-193, there is no time limitation on these charges.

### B.    THE PLAINTIFF'S CLAIMS

This action was commenced by a Complaint dated May 27, 2003.  Based on the above facts, the Plaintiff has attempted to fashion two principal causes of action under 42 U.S.C. § 1983: a federal claim for malicious prosecution against Detective Ayr and a claim for alleged failure to properly train its officers against the Town.  In particular, the Plaintiff has alleged that, "[t]his is an action for malicious prosecution brought by the plaintiff, who was three-times brought to trial for arson murder notwithstanding the fact that he is innocent."  Complaint, ¶1.  The Plaintiff has also alleged that, "the

Town of Branford had virtually no formal training for officers engaged in arson investigation. The failure of investigating officers to follow any standards recognized by professional arson investigators made it impossible for reliable results to be obtained." Id., ¶16.

The Plaintiff cannot prevail on either of these theories, has not produced any evidence to support them, and they should be disposed of by the entry of summary judgment in favor of Detective Ayr and the Town.

## III.  LEGAL ARGUMENT

### A.  SUMMARY JUDGMENT IS WARRANTED

A motion for summary judgment should be granted if the court determines that there is no genuine issue of material fact to be tried and that the facts as to which there is no such issue warrant judgment for the moving party as a matter of law. Fed. R. Civ. P. 56(c); see generally Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Cronin v. Aetna Life Ins. Co., 46 F.3d 196, 202 (2d Cir. 1995). The burden of showing that no genuine factual dispute exists rests on the party seeking summary judgment. Adickes v. S. H. Kress & Co., 398 U.S. 144 (1970); Cronin, 46 F.3d at 202.

The Second Circuit has ruled, "mere conjecture or speculation by the party resisting summary judgment does not provide a basis upon which to deny the motion." Quarles v. General Motors Corp., 758 F.2d 839, 840 (2d Cir. 1985). Instead, *"the plaintiff must offer concrete evidence raising genuine disputes of material fact tending to show that his version of events is more than fanciful."*

Johnson v. Carpenter Technology Corp., 723 F. Supp. 180, 182 (D. Conn. 1989) (emphasis added). "The mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986).

There are no genuine issues of fact regarding the Plaintiff's claims against Detective Ayr or the Town. They are entitled to judgment as a matter of law on the Complaint.

**B.     THE PLAINTIFF CANNOT ESTABLISH A VIOLATION OF 42 U.S.C. §1983**

Section 1983 of Title 42 of the United States Code "provides a remedy for deprivations of rights secured by the Constitutions and laws of the United States . . . " Lugar v. Edmondson Oil Co., 457 U.S. 922, 924 (1982). In order to state a claim upon which relief can be granted pursuant to 42 U.S.C. §1983, a plaintiff "must allege (1) that the challenged conduct was attributable at least in part to a person acting under color of state law, and (2) that such conduct deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States." Dwares v. City of New York, 985 F.2d 94, 98 (2d Cir. 1993). In addition, a plaintiff must demonstrate that his injuries were proximately caused by the defendants' violation of law. See Atkins v. New York City, 143 F.3d 100, 103 (2d Cir. 1998). Based on the undisputed facts, the Plaintiff cannot establish that he was denied a right, privilege or immunity secured by the Constitution or laws of the United States.

### 1.    The Plaintiff Cannot Sustain His Malicious Prosecution Claim

A plaintiff seeking to recover for malicious prosecution pursuant to 42 U.S.C. §1983 must show "(1) whether a defendant's conduct was tortuous under state law, and (2) whether a plaintiff's injuries resulted from a deprivation of liberty guaranteed by the Fourth Amendment." Weinstock v. Wilk, 296 F.Supp. 2d 241, 248 (D. Conn. 2003) *citing* Singer v. Fulton County Sheriff, 63 F.3d 110, 116-117 (2d Cir. 1995).  Under Connecticut law, a plaintiff seeking to recover for malicious prosecution must show that, "(1) the defendant initiated a prosecution against plaintiff, (2) without probable cause, (3) the proceeding was begun with malice, and (4) the matter ended in the plaintiff's favor."  Id.  Although Detective Ayr admittedly helped initiate the prosecution against Plaintiff, satisfying the first prong of the Plaintiff's malicious prosecution claim, the undisputed facts show that Plaintiff cannot demonstrate the remaining three elements.

### a.    There was Probable Cause for Plaintiff's Arrest.

The existence of probable cause is a complete defense to a claim for false arrest, or malicious prosecution.  Wilk, 296 F. Supp. at 248.  The issuance of a warrant by a judge creates a presumption of probable cause.  Golino v. City of New Haven, 950 F.2d 864 (2d Cir. 1991).  This presumption can be overcome only by a substantial showing that the officer seeking the warrant "knowingly and intentionally, or with reckless disregard for the truth, made a false statement in his affidavit or omitted material information, and that such false or omitted information was necessary to the finding

of probable cause." <u>Csoka v. County of Suffolk</u>, 85 F. Supp. 2d 117, 122 (E.D.N.Y. 2000) (<u>quoting</u>

<u>Soares v. Connecticut</u>, 8 F.3d 917, 920 (2d Cir. 1993)).

Connecticut General Statutes §53a-111 provides that:

(a)  A person is guilty of arson in the first degree when, with intent to destroy or damage a building, as defined in section 53a-100, he starts a fire or causes an explosion, and (1) the building is inhabited or occupied or the person has reason to believe the building may be inhabited or occupied; or (2) any other person is injured, either directly or indirectly; or (3) such fire or explosion was caused for the purpose of collecting insurance proceeds for the resultant loss; or (4) at the scene of such fire or explosion a peace officer or firefighter is subjected to a substantial risk of bodily injury.

(b)  Arson in the first degree is a class A felony.

Conn. Gen. Stat. §53a-111.

Connecticut General Statutes §53a-54d provides that:

A person is guilty of murder when, acting either alone or with one or more persons, he commits arson and, in the course of such arson, causes the death of a person. Notwithstanding any other provision of the general statutes, any person convicted of murder under this section shall be punished by life imprisonment and shall not be eligible for parole.

Conn. Gen. Stat. §53a-54d.

Our Supreme Court has noted that there is a more severe penalty for deaths caused by arson

because "[a]rson . . . has the potential for disaster not only to any intended victims but also to entire

neighborhoods and multiple unintended victims." <u>State v. Dupree</u>, 196 Conn. 655, 665 (1985); <u>see</u>

<u>also</u> <u>State v. Young</u>, 191 Conn. 636, 644 (1983) (noting that, "when the arsonist himself causes a

death during the course of committing that crime it would be a rare case where the death would also not be 'in furtherance' of the arson.").[7]

There is an abundance of evidence supporting probable cause for the Plaintiff's arrest on both of these charges. To begin, the Plaintiff was the last person in the building and he placed himself at the scene of the Fire approximately one half hour before the 911 call was received by police. Ayr. Aff., ¶32; Pl.'s Dep. Tr. at 31. The circumstances of the Fire, fueled by an accelerant, occurring on a holiday just after the Plaintiff left his business, pointed to arson. Ayr Aff., ¶___; see also Exhibits A1 and A2.

The Plaintiff's story about a natural gas problem was thoroughly examined by investigators who tested the gas lines, pressure regulator, and meter. Exhibit A10. Other possible causes, such as electrical or heating problems, were also investigated and ruled out. Exhibit A11. There was no evidence of an explosion, no blown out windows or collapsed walls that would have been consistent with a natural gas ignition. Pl.'s Dep. Tr. at 56. Instead, investigators found burn patterns consistent with an accelerant and also found evidence of "medium boiling range petroleum distillate (flammable liquids)." Ayr Aff., ¶¶43-45. The building was locked and there was no evidence of burglary. Pl.'s Dep. Tr. at 137-138. In sum, there was direct evidence that the Plaintiff was the last one in the building and was the person most likely to have intentionally set the Fire.

---

[7] Unlike a murder charge, which requires "intent to cause the death of another person," *arson* murder does not require specific intent to kill. *Compare* Conn. Gen. Stat. §53a-54a *with* §53a-54d.

The Plaintiff's flooring business was suffering from a declining business environment, he was in arrears on his taxes to both the state and federal government and, in his own words, "the whole trade was down. It wasn't just my business." Pl.'s Dep. Tr. at 62. The joint investigation conducted by the Branford Police, State Fire Marshal, ATF, with assistance from the New Haven's State's Attorney's Office, was exhaustive, lasting from November 28, 1996 through March 7, 1997. Ayr. Aff., ¶8. Approximately 40 witnesses were interviewed and a number of experts and independent consultants were relied upon. Ayr Aff., ¶17; see also Exhibits A4, A10, and A11.

The evidence that the Plaintiff started the Fire with intent to destroy or damage the building where his business was located, to collect insurance proceeds, is overwhelming. There was ample probable cause to support a charge of arson in the first degree under Connecticut General Statutes §53a-111. Because, in the course of such arson, a death was caused, there probable cause to support a charge of arson murder under Connecticut General Statutes 53a-54d.

Moreover, the New Haven State's Attorney and Judge Devlin both signed the Arrest Warrant Application and specifically found that, "there is probable cause to believe that an offense has been committed and that the accused committed it . . ." Ayr Aff., ¶¶63-64; see also Arrest Warrant Application at 1. Absent a knowing and intentional false statement made with reckless disregard for the truth, the warrant executed by Judge Devlin creates a presumption of probable cause and a

377702

23

complete defense to the plaintiff's claim. Based on these undisputed facts, Detective Ayr is entitled to summary judgment.

>    **b.**    <u>**There is no Evidence of Malice or a Favorable Disposition**</u>.

The Plaintiff's claim is also deficient in that he cannot demonstrate malice in connection with the issuance of the Arrest Warrant, nor can he show that the proceedings terminated in his favor. <u>See</u> <u>Wilk</u>, 296 F.Supp. 2d at 248. Although the Plaintiff made baseless allegations in his complaint that he was singled out in retaliation for the death of Firefighter Ramos, Plaintiff cannot produce any evidence to support such an outrageous charge. Complaint, ¶17. Similarly, Plaintiff made vague and unsubstantiated allegations at his deposition about alleged bias by Detective Ayr, but he has failed to produce a single piece of evidence to support these scurrilous and defamatory claims. <u>See</u> Pl.'s Dep. Tr. at 128-133. When contrasted with the abundant evidence supporting probable cause for the charges, the Plaintiff's attempt to avoid summary judgment by making outlandish claims, without a shred of evidence, are laid bare.

Moreover, the Plaintiff was never acquitted of the charges. Pursuant to Connecticut General Statutes §54-193, there is no limitation of time within which the Plaintiff may be prosecuted for arson murder. <u>See</u> Conn. Gen. Stat. §54-193(a). Although the prosecutor chose to not pursue a fourth trial, after a mistrial and two hung juries, the Plaintiff was not vindicated or acquitted of the charges. Ayr

Aff., ¶78. Since the existence of probable cause, or, as discussed below, arguable probable cause,

defeats the Plaintiff's claim, the Court need not reach this issue.

### C.   DETECTIVE AYR IS ENTITLED TO QUALIFIED IMMUNITY BECAUSE THERE WAS AT LEAST ARGUABLE PROBABLE CAUSE

Even if the Court were to conclude that there was not sufficient evidence to support probable

cause, or that factual disputes preclude such a finding at this stage, propositions that Detective Ayr

disputes, he is still entitled to qualified immunity because there was, at the very least, arguable

probable cause. Colon v. Ludemann, 747 F. Supp. 2d 747, 761 (D. Conn. 2003). In Colon, a similar

case involving an arrest based on a warrant, this Court held that, although questions of fact precluded

a finding of probable cause, the officer who signed the arrest warrant was nonetheless protected by

the doctrine of qualified immunity because reasonable officers could have disagreed over whether

there was probable cause. Colon, 747 F. Supp. 2d at 761. The Court also noted that the arresting

officer was not required to "eliminate[] every theoretically plausible claim of innocence before

making an arrest." Id. Accordingly, this very Court granted the defendant summary judgment on

qualified immunity grounds, even though the Court concluded there were material questions of fact in

dispute regarding whether there was probable cause. Id.

The qualified immunity defense protects government officials "from liability for civil

damages insofar as their conduct does not violate clearly established statutory or constitutional rights

of which a reasonable person would have known." Connell v. Signoracci, 153 F.3d 74, 80 (2d Cir.

1998) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)).  As such, "qualified immunity is an entitlement not to stand trial or face the burdens of litigation." Id. (internal quotations omitted); Mitchell v. Forsyth, 472 U.S. 511, 526 (1985).  "The doctrine protects public officials from personally facing the risk of incurring ruinous liability in the form of money damages, which would deter qualified people from public service.  It also safeguards the public interest in having its employees act with independence and without fear of consequences." Eng v. Coughlin, 858 F.2d 889, 895 (2d Cir. 1988) (internal quotation and citation omitted).

"Because the defense of qualified immunity is designed to relieve government officials of the burdens of litigation as well as the threat of damages, *summary judgment is encouraged as a device for disposing of claims barred by such immunity*." In Re State Police Litigation, 88 F.3d 111, 123 (2d Cir. 1996) (emphasis added); see also Harlow, 457 U.S. at 818; Behrens v. Pelletier, 516 U.S. 299, 308 (1996); Cartier v. Lussier, 955 F.2d 841, 844 (2d Cir. 1992).  To establish this defense at the summary judgment stage, "the officers must show upon facts that are undisputed either that their conduct did not violate 'clearly established rights' of which a reasonable person would have known, or that it was objectively reasonable to believe that their acts did not violate those clearly established rights." Soares v. State of Connecticut, 8 F.3d 917, 920 (2d Cir. 1993) (internal quotations omitted).

A defendant is entitled to summary judgment when "no reasonable jury looking at the evidence in the light most favorable to, and drawing all inferences most favorable to, the plaintiffs,

could conclude that is was objectively unreasonable for the defendant to believe that he was acting in a manner that did not clearly violate an established right." Lennon v. Miller, 66 F.3d 416, 420 (2d Cir. 1995) (quoting Robinson v. Via, 821 F.2d 913, 921 (2d Cir. 1987)).

In the context of allegations of false arrest, the Second Circuit has stated that:

> [A]n arresting officer is entitled to qualified immunity from a suit for damages on a claim for arrest without probable cause if either (a) it was objectively reasonable for the officer to believe that probable cause existed, or (b) officers of reasonable competence could disagree on whether the probable cause test was met.

Golino, 950 F.2d at 870.

"If the officer makes either showing, he is entitled to qualified immunity." Cook, 41 F.3d at 78. Moreover, in the context of qualified immunity, the defending officer need only show "arguable" probable cause. Id. Arguable probable cause exists when a reasonable police officer in the same circumstances and possessing the same knowledge as the officer in question could have reasonably believed that probable cause existed in light of well-established law. Id. (citations and quotations omitted).

For the reasons set forth above, even if there was not probable cause, reasonable officers certainly could have disagreed on that issue and there was, at the very least, arguable probable cause. Colon, 283 F. Supp. 2d at 761. Therefore, based on these undisputed facts, Detective Ayr is entitled to qualified immunity and summary judgment on the Plaintiff's Complaint.

377702

27

**D.    THE PLAINTIFF CANNOT ESTALISH THAT THE TOWN OF BRANFORD IS LIABLE UNDER MONELL**

In order to hold a municipality liable under 42 U.S.C. § 1983, a plaintiff must prove that a municipal "policy" or "custom" caused the deprivation of his rights of which he complains.  Board of Comm'rs v. Brown, 520 U.S. 397, 403 (1997) (citing Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694 (1978)).  "Municipal liability under § 1983 attaches where – and only where – a deliberate choice to follow a course of action is made from among various alternatives by city policymakers." Id. (quotations omitted) (quoting Pembaur v. Cincinnati, 475 U.S. 469, 483-484 (1986).  The United States Supreme Court has stated that:

> it is not enough for a § 1983 plaintiff merely to identify conduct properly attributable to the municipality. The plaintiff must also demonstrate that, through its *deliberate* conduct, the municipality was the "moving force" behind the injury alleged. That is, a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights.

Brown, 520 U.S. at 404.

The Court in Monell, in holding that a municipality could be sued under 42 U.S.C. § 1983, considered the execution of a proactive government policy that prescribed particular actions on the part of its employees.  Monell v. Dep't of Soc. Servs., 436 U.S. 658 (1978).  The Court has since found, however, that a municipality can also be liable under 42 U.S.C. § 1983 for actions it failed to take.  The Second Circuit has held that, "[i]t is impossible to prevail on a claim that the Town's

377702

28

training program was inadequate without any evidence as to whether the Town trained its officers . . . how the training was conducted, how better or different training could have prevented the challenged conduct, or how 'a hypothetically well-trained officer would have acted under the circumstances.'" Amnesty America v. Town of West Hartford, 361 F.3d 113, 132 (2d Cir. 2004) (affirming summary judgment on plaintiffs' failure to train claim).

### 1.    Plaintiff has no Evidence to Support a Monell Claim

First, it is fundamental that, because there was no constitutional violation by Detective Ayr, there cannot be a finding of inadequate training against the Town. In Monell, the Supreme Court established that the first inquiry in any case alleging municipal liability under 42 U.S.C. § 1983 is whether there exists a direct causal link between a municipal policy and the alleged constitutional deprivation. City of Canton v. Harris, 489 U.S. 378, 385 (1989). The Court has also held, particularly in regard to allegations of a municipality's failure to train, that there are limited circumstances in which such allegation can form the basis for liability under 42 U.S.C.S. § 1983. Id at 387.

In City of Canton, the Court held that, "the inadequacy of police training can form the basis for 42 U.S.C. § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of the persons with whom the police come in contact." Id at 388. Proof of deliberate indifference requires more than a showing of mere negligence. Farmer v. Brennan, 511 U.S. 825,

835 (1994); <u>Sarus v. Rotundo</u>, 831 F.2d 397, 401 (2d Cir. 1987) (noting that "it must be demonstrated that the municipality's failure to supervise or properly train its police force is so severe as to constitute *gross negligence*.") (emphasis added).

In defining "deliberate indifference," the Court articulated a stringent standard before liability may be imposed. The Court held that, "in light of the duties assigned to specific officers or employees the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need." <u>City of Canton</u>, 489 U.S. at 390; <u>see also</u> <u>Amnesty America</u>, 361 F.3d at 129.

In addition to proving deliberate indifference, the Plaintiff must show a causal link between such indifference and a violation of a constitutional right. <u>City of Canton</u>, 489 U.S. at 391. The Plaintiff must prove that the alleged deficiency in training actually caused the police officer's indifference as to the constitutional rights and that the injury would have been avoided had the employee been trained under a program that was not deficient in the identified respect. <u>Id.</u> at 391. The Second Circuit has held that plaintiffs must prove not only that the purported failure to train constituted deliberate indifference, "but also that plaintiffs identify a specific deficiency in the city's training program and establish that that deficiency is closely related to the ultimate injury, such that it actually caused the caused the constitutional deprivation." <u>Amnesty America</u>, 361 F.3d at 129.

The Plaintiff has failed to produce a single piece of evidence that could conceivably support a failure to train claim. When asked through discovery to "identify the factual basis for the Plaintiff's claim that the Town of Branford demonstrated a reckless indifference to the constitutional rights of the Plaintiff," he responded, summarily, "[p]lease see Complaint, ¶19. Failure to properly train police officers and fire officials in conducting an investigation." Exhibit H (Pl.'s Resp. to Defs.' First Interrogs. & Req. for Produc. of Docs. of 3/29/04, No. 7.). Plaintiff failed to disclose experts regarding police training procedures and has not identified any evidence of a single deficiency in Detective Ayr's training that could have possibly caused the Plaintiff harm.

Connecticut General Statutes §29-310 grants jurisdiction to the Commissioner of Public Safety, through the Office of the State Fire Marshal, and mandates that it "shall thoroughly investigate the cause, circumstances and origin of all fires or explosions to which his attention has been called . . . by reason of which any property has been destroyed or damages or any person has been injured or killed, and shall especially examine and decide as to whether such fire was the result of carelessness, design, an incendiary device or any other criminal act." Conn. Gen. Stat. §29-310(a). Detective Ayr and the Branford Police Department appropriately relied upon the expertise of the State Fire Marshal and worked jointly with that office, the ATF and the State's Attorney's Office. Ayr Aff., ¶8. Plaintiff's alleged failure to train claim is unsupported by the record and should be disposed of summarily.

IV.    **CONCLUSION**

Whether the Plaintiff actually committed the offenses for which he was charged is immaterial. The Plaintiff's arrest was preceded by an investigation that established there was probable cause to believe that the Plaintiff had committed crimes.  Detective Ayr discharged his duty by securing a warrant, signed by a neutral magistrate, which creates a heavy burden and a presumption of probable cause that the Plaintiff simply cannot overcome in this case.

For all of the foregoing reasons, Detective Duncan Ayr and the Town of Branford respectfully request that the Court grant their Motion for Summary Judgment.

DEFENDANTS,
DUNCAN AYR and TOWN OF BRANFORD


By:___/s/ James N. Tallberg_____
JAMES N. TALLBERG, ESQ.
Federal Bar Number Ct17849
UPDIKE, KELLY & SPELLACY, P.C.
One State St., P.O. Box 231277
Hartford, CT 06123-1277
Tel. No. (860) 548-2600
jtallberg@uks.com

## CERTIFICATION

I hereby certify that on November 1, 2004, a copy of the foregoing was filed electronically.

Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing

system.  Parties may access this filing thought the Court's system.

Norman A. Pattis, Esq.
Williams & Pattis, LLC
51 Elm Street, Suite 409
New Haven, CT 06510.
Norman A. Pattis, Esq.
Williams & Pattis, LLC
51 Elm Street, Suite 409
New Haven, CT 06510.

By:____/s/ James N. Tallberg_____
    JAMES N. TALLBERG, ESQ.
    Updike, Kelly & Spellacy, P.C.

377702

33