UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

---

ANTHONY BONTATIBUS          :          CIVIL ACTION NO. 3:03CV00948(JCH)
                            :
    Plaintiff,              :
                            :
V.                          :
                            :
DUNCAN AYR,                 :
and TOWN OF BRANFORD        :
                            :
    Defendants.             :          NOVEMBER 1, 2004
                            :

## LOCAL RULE 56(a)1 STATEMENT IN SUPPORT OF
## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Pursuant to Rule 56(a)1 of the Local Rules of Civil Procedure, the defendants Duncan Ayr and the Town of Branford respectfully offer the following Statement of Undisputed Material Facts in support of their Motion for Summary Judgment.

1.    On Thanksgiving Day, November 28, 1996, a business known as Bontatibus Floors & More operated at 43 School Ground Road. Complaint, ¶¶6-7; Answer, ¶¶6-7.

2.    At that time, plaintiff Anthony "Gene" Bontatibus, Sr. was the principal owner of Bontatibus Floors & More ("Plaintiff"). Id., ¶6.

377814

3.   At all times relevant to the complaint in this action, defendant Duncan Ayr was a member of the Branford Police Department acting in his capacity as a member of said Department. Complaint, ¶4; Answer, ¶4; Exhibit A (Affidavit of Duncan Ayr of 10/29/04, ¶3) ("Ayr Aff.").

4.   On November 28, 1996, at approximately 4:24 p.m., a 911 call was received by Branford emergency services indicating that there was a fire at 43 School Ground Road, Branford, Connecticut (the "Fire"). Exhibit B (Deposition of Anthony Bontatibus of 6/10/04 at 24 [Volume I]) ("Pl.'s Dep. Tr.").[1]

5.   After the Fire was reported, Branford firefighters responded to the blaze. Complaint, ¶7; Answer, ¶7.

6.   In the course of putting out the Fire, one Branford firefighter, Edward Ramos, was killed. Complaint, ¶8; Answer, ¶8.

7.   The Branford Police Department thereafter conducted an investigation into the facts and circumstances surrounding the Fire and the death of Edward Ramos. Complaint, ¶9; Answer, ¶9.

8.   The investigation of the Fire was jointly conducted by the Branford Police Department, the Office of the State Fire Marshal, the New Haven State's Attorney's Office, and the Bureau of Alcohol, Tobacco and Firearms ("ATF"). Ayr Aff., ¶8; Exhibit A3 (Dearington letter to Galvin of 1/8/97).

---

[1] The transcript from the continuation of Plaintiff's deposition on 8/6/04 [Volume II] is attached as Exhibit C.

9. Detective Sergeant William Carroll was the officer in charge of the Fire investigation for the Branford Police Department. Ayr Aff., ¶9.

10. Detective William L. Lewis was the officer in charge of the State Fire Marshal's Investigation. Ayr Aff., ¶10.

11. Special Agent Wayne Miller was the officer in charge of the ATF's investigation of the Fire. Ayr Aff., ¶11.

12. Michael Dearington was in charge of the New Haven State's Attorney's investigation of the Fire. Ayr Aff., ¶12.

13. Detective Lewis prepared a written report concerning his actions regarding the Fire investigation, dated, December 10, 1996, No. P-96-01611-3, a copy of which was filed with the Branford Police Department. Ayr Aff., ¶13.

14. A genuine copy of Detective Lewis's December 10, 1996 Report is attached hereto as Exhibit A1. Ayr Aff., ¶14.

15. Special Agent Miller prepared a written report concerning his actions regarding the Fire investigation, dated December 11, 1996, No. 741407-97-0012, a copy of which was filed with the Branford Police Department. Ayr Aff., ¶16.

16. A genuine copy of Special Agent Miller's December 11, 1996 Report is attached hereto as Exhibit A2. Ayr Aff., ¶17.

377814

17. As part of their investigation of the Fire, members of the Branford Police Department, assisted by personnel from other law enforcement agencies, interviewed approximately 40 witnesses. Ayr Aff., ¶20.

18. A copy of the index of witness statements taken by law enforcement personnel as part of the Fire investigation is attached hereto as Exhibit A4. Ayr Aff., ¶21.

19. On November 28, 1996, members of the Branford Police Department took written statements from the Plaintiff and his son, Gene, Bontatibus, Jr. Pl.'s Dep. at 29.

20. Copies of the November 28, 1996 written statements of the Plaintiff and Mr. Bontatibus, Jr. are attached hereto as Exhibits A5 and A6. Ayr Aff., ¶23; Pl.'s Dep. Tr. at 29

21. On November 29, 1996, as part of their investigation, the Branford Police had the Plaintiff sign a consent to search form, a genuine copy of which is attached hereto as Exhibit A7.

22. On November 30, 1996, members of the State Fire Marshal's Office took written statements from the Plaintiff and Mr. Bontatibus, Jr. Ayr Aff., ¶25; Pl.'s Dep. Tr. at 37-38.

23. Copies of the November 30, 1996 written statements of the Plaintiff and Mr. Bontatibus, Jr. are attached hereto as Exhibits A8 and A9. Ayr Aff., ¶26; Pl.'s Dep. Tr. at 37-38.

24. In his November 28, 1996 statement, Plaintiff stated that on the morning of the Fire, Plaintiff shut off the gas valve outside the building at Bontatibus Floors & More. Pl.'s Dep. Tr. at 27; 11/28/96 Statement at 3.

377814

25. Plaintiff also indicated in his statement that he shut off all the heat and electrical switches that operated fans and furnaces inside the building. Id.

26. Plaintiff also indicated in his statement that he smelled gas, so he opened doors at Bontatibus Floors & More in an attempt to air the place out. Id.

27. Plaintiff also indicated in his statement that, on the day of the Fire, he left Bontatibus Floors & More at approximately 11:30 a.m., and returned at approximately 2:45 p.m. Id.

28. Plaintiff also indicated in his statement that, on the day of the Fire, his son was with him at Bontatibus Floors & More for part of the time, and that the Plaintiff left the business between approximately between 3:30 and 3:45. Id.; see also Pl.'s Dep. Tr. at 31.

29. On the day of the Fire, the Plaintiff had been at Bontatibus Floors & More approximately one half hour before the 911 call. Ayr Aff., ¶32; see also Exhibit D (Pl.'s testimony in Bontatibus Floors, v. Hartford Fire Ins., No. CV98-0420255S of 2/19/04 at 100-102 (testifying that he left building at "[o]h, four o'clock, you know, that area. Yeah."

30. When the firefighters initially arrived at the scene all doors and windows were secure. Pl.'s Dep. Tr. at 137.

31. The law enforcement personnel who investigated the Fire found no evidence of burglary. Pl.'s Dep. Tr. at137-138.

377814

5

32. November 29, 1996, as part of their investigation, the Branford Police had the Plaintiff sign a consent to search form. Pl.'s Dep. Tr. at 49.

33. On December 1, 1996, members of the Branford Police Department executed search and seizure warrants at both Bontatibus Floors & More at 43 School Ground Road and the Plaintiff's residence at 155 Northford Road. Ayr Aff., ¶35; Pl.'s Dep. Tr. at 60-61.

34. Between December 2, 1996 and December 10, 1996, additional warrants were executed at the People's Bank and New Haven Savings Bank for records related to both Mr. Bontatibus and his business. Ayr Aff., ¶36; Pl.'s Dep. Tr. at 60-61.

35. Members of the Fire Marshal's Office concluded that the fire started in the kitchen area on the north side of the structure, near an office area. Ayr Aff., ¶37.

36. The Fire Marshal's investigation also eliminated all other possible ignition and heat sources, including natural gas and electricity, which may have resulted in starting the fire. Ayr Aff., ¶38.

37. As part of the investigation of the Fire, employees of the Southern Connecticut Natural Gas Company, along with Detective Michael Smarz, tested the gas line from the street to the structure that burned down, along with the buildings' natural gas meter and regulator and they concluded that there were no gas leaks. Ayr Aff., ¶39.

38. A genuine copy of Detective Smarz's Continuation of Investigation Report, No. P96-016113, dated December 10, 1996, with related witness statements from Southern Connecticut Gas Company employees Michael P. Corolla and Glenn R. Smith, Sr., is attached hereto as Exhibit A10. Ayr Aff., ¶40.

39. As part of the investigation of the Fire, electrical consultant Joseph Cristino, Professional Engineer, examined and eliminated all possible electrical sources as the ignition source of the Fire. Ayr Aff., ¶41.

40. A genuine copy of Mr. Cristino's Report, dated December 3, 1996, a copy of which was filed with the Branford Police Department, is attached hereto as Exhibit A11. Ayr Aff., ¶42.

41. Detective Lewis of the Office of the State Fire Marshal concluded that there was an unusual burn pattern on the floor of the kitchen area and ceramic tile room. Ayr Aff., ¶43.

42. Detective Lewis further concluded that the burn pattern is usually found at fire scenes where an ignitable liquid has been introduced (poured) in an attempt to speed the spread of fire and to move it from one location to another. Ayr Aff., ¶44.

43. Detective Lewis further concluded that an analysis by the Connecticut State Police Forensic Lab of evidence gathered at the Fire scene revealed the presence of medium boiling range petroleum distillate (flammable liquids). Ayr Aff., ¶45.

44. On November 30, 1996, Detective Lewis concluded that the Fire was of human design and was intentionally set as a direct result of an intentional act of arson. Ayr Aff., ¶46.

45. Detective Lewis concluded that a natural gas explosion was ruled out as a cause of the fire, since all evidence found proved inconsistent with such a type of explosion. Ayr Aff., ¶47.

46. Special Agent Miller of the ATF also concluded that the fire was intentionally set. Ayr Aff., ¶48; Pl.'s Dep. Tr. at 58.

47. Robert A. Brosseau and Vickramjit Sharma who are Forensic Fraud Examiners for the State of Connecticut Division of Criminal Justice examined records seized from the Plaintiff and his business. Ayr Aff., ¶49; Pl.'s Dep. Tr. at 61.

48. Messrs. Brosseau and Sharma prepared a written report regarding their findings. Ayr Aff., ¶50.

49. The report prepared by Messrs. Brosseau and Sharma was dated December 17, 1996. Ayr Aff., ¶51.

50. Messrs. Brosseau and Sharma performed financial analysis of the Plaintiff's business records for the calendar year 1996 from the beginning through the date of the fire. Ayr Aff., ¶52.

51. Messrs. Brosseau and Sharma compared the Plaintiff's financial records for calendar years 1994 and 1995, with 1996. Ayr Aff., ¶53.

52. Messrs. Brosseau and Sharma concluded that the 1996 gross sales of Bontatibus Floors & More, Inc., declined by 15% from that of the same time period for 1995. Ayr Aff., ¶54.

53. Messrs. Brosseau and Sharma further concluded that, "[b]ased on . . . (their) examination and analysis, we conclude that the general business trends indicate a declining business environment at the time of the fire." Ayr Aff., ¶55; Pl.'s Dep. Tr. at 62.

54. As of January 31, 1997, the Plaintiff's business owed more than $64,655 in back taxes to the federal government. Ayr Aff., ¶56; Pl.'s Dep. Tr. at 62.

55. At the time of the Fire, the Plaintiff's business owed back taxes to the State of Connecticut, Department of Revenue Services of approximately $23,000 and had entered into a payment plan to try to resolve that debt. Ayr Aff., ¶57; Pl.'s Dep. Tr. at 62.

56. In 1992, approximately five years before the Fire, Plaintiff's business filed for Bankruptcy. Ayr Aff., ¶58; Pl.'s Dep. Tr. at 20.

57. Detective Ayr was not the lead investigator regarding the fire investigation. Ayr Aff., ¶59.

58. Between December 3, 1996 and December 9, 1996, Detective Ayr interviewed, or assisted other law enforcement personnel with interviews, of at least 8 witnesses: Kenneth M. Barbour, Justin C. Infantino, Timothy J. Judd, James A. Paul, Sr., James K. Kennedy, Albert I. Sheppard, Alice E. Mcguire and Marion H. McClellan. Ayr Aff., ¶60.

377814

9

59. Genuine copies of Detective Ayr's Case/Incident Reports regarding these interviews, No. 96-20506, dated December 3, 1996 through December 9, 1996, are attached hereto as Exhibits A12 through A16. Ayr Aff., ¶61.

60. On or about March 7, 1997, Detective Ayr signed an affidavit in support of an Application for Arrest Warrant (the "Arrest Warrant Affidavit"). Ayr Aff., ¶62; Pl.'s Dep. Tr. at 23-24.

61. A genuine copy of the Arrest Warrant Affidavit is attached to Detective Ayr's Affidavit as Exhibit A17. Ayr Aff., ¶63; Pl.'s Dep. Tr. at 23-24.

62. On or about March 7, 1997, the Arrest Warrant Affidavit was also signed by the State's Attorney for the Judicial District of New Haven, Michael Dearington. Ayr Aff., ¶64; Pl.'s Dep. Tr. at 23-24.

63. Mr. Dearington assisted Detective Ayr with the preparation of the Arrest Warrant Affidavit. Ayr Aff., ¶65.

64. On or about March 7, 1997, the Arrest Warrant Application was presented to Connecticut Superior Court Judge Robert J. Devlin, who signed the Warrant. Ayr Aff., ¶66; Pl.'s Dep. Tr. at 23-24.

65. Judge Devlin signed the Warrant under the section that reads, "[t]he foregoing Application for an arrest warrant, and affidavit(s) attached to said Application, having been submitted

377814

10

to and considered by the undersigned, the undersigned finds from said affidavits(s) that there is probable cause to believe that an offense has been committed and that the accused committed it and, therefore, that probable cause exists for the issuance of a warrant for the arrest of the above-named accused." Arrest Warrant Application at 1; Ayr Aff., ¶67; Pl.'s Dep. Tr. at 24.

66. In the Arrest Warrant Affidavit, Detective Ayr disclosed that the facts and circumstances stated in the Affidavit were based on personal knowledge and observations "as well as information received from other police officers acting in their official capacity and from official police reports and statements made by prudent and credible witnesses." Arrest Warrant Affidavit, ¶1; Ayr Aff., ¶68.

67. In the Arrest Warrant Affidavit, Detective Ayr stated that, on November 28, 1996, members of the State Police Fire Marshal's Office arrived on the scene and their responsibility was to determine cause and origin of the fire. Arrest Warrant Affidavit, ¶8; Ayr Aff., ¶69.

68. In the Arrest Warrant Affidavit, Detective Ayr disclosed that the Plaintiff indicated in his statements to law enforcement that he noted a "rotten egg" smell at Bontatibus Floors & More on the day of the Fire and that, on November 13, 1996, he had a contractor repair a broken gas line at the business. Arrest Warrant Affidavit, ¶10; Ayr Aff., ¶70.

69. On the date of the Fire, the Plaintiff's business was insured by The Hartford Insurance Company ("The Hartford"), with Policy No. 31 SBK GB3476, effective 11/6/96 to 11/5/97 (the "Policy"). Arrest Warrant Aff., ¶26; Ayr Aff., ¶71; Pl.'s Dep. Tr. at 62-63.

70. A genuine copy of the Policy is attached hereto as Exhibit A18. Ayr Aff., ¶72.

71. At all times relevant to the Complaint in this action, Martin White was employed by The Hartford. Ayr Aff., ¶73.

72. In the Arrest Warrant Affidavit, Detective Ayr stated that, "according to Martin White, an agent of the Hartford Insurance Company, Bontatibus Floors & More was insured for $300,000 for its contents and $500,000 for business interruption." Arrest Warrant Aff., ¶26; Ayr Aff., ¶74.

73. Mr. White, who was then a senior investigator for The Hartford, provided Detective Ayr with the insurance information and he relied on it in good faith, believing that Mr. White was a credible witness. Ayr Aff., ¶75.

74. The information relied on by Detective Ayr concerning the amount of insurance coverage for this loss was later discovered to be incorrect. Ayr Aff., ¶76.

75. Upon learning of this discrepancy, Detective Ayr brought it to the attention of his supervisor, Detective Sergeant Carroll and Mr. Dearington. Ayr Aff., ¶78.

76. Although after the Plaintiff was arrested the precise amount of insurance coverage became an issue in dispute, that did not affect the conclusion of Detective Ayr that there was probable cause for the charges against the Plaintiff. Ayr Aff., ¶79.

77. Once the Plaintiff was arrested, the decision to prosecute the case rested with the State's Attorney's Office. Ayr Aff., ¶80.

78. The Plaintiff was never acquitted of the criminal charges against him. Instead, the State's Attorney decided, after one mistrial and two deadlocked juries, to not further prosecute the case. Ayr Aff., ¶81.

79. The Plaintiff claims that, on the date of the Fire, he did not know how much insurance coverage he had. Pl.'s Dep. Tr. [Volume II] at 96-97.

80. The Plaintiff further claims that, at some point, he became aware that the Policy provided coverage of approximately $124,000 for inventory, coverage for automobiles, and for other ancillary coverage. Id. at 97.

81. The Policy also provided coverage for "replacement cost" of the building where the Fire occurred, which is listed in the Policy as $462,000. Pl.'s Dep. Tr. at 110.

82. In approximately August or September 2004, the plaintiff reached a settlement agreement with The Hartford regarding his insurance claim arising from the Fire. Pl.'s Dep. Tr. at 118-119.

83.   On or about December 6, 1996, the Plaintiff retained counsel to represent him regarding the investigation of the Fire. Pl.'s Dep. Tr. at 46.

84.   Upon his retention of counsel, the Plaintiff asserted his Fifth Amendment right against self incrimination. Pl.'s Dep. Tr. at 45-46.

85.   By letter dated December 6, 1996, Attorney Philip Russell informed the Branford Police Department, with a copy to New Haven State's Attorney Michael Dearington, that the Plaintiff "has been instructed not to answer any questions prior to consulting with [Attorney Russell] and we are therefore requesting that he not be contacted except in accordance with this request." Exhibit E (Russell letter to Branford Police Department of 12/6/96); Pl.'s Dep. Tr. at 46.

86.   A genuine copy of Attorney Russell's letter dated December 6, 1996 is attached hereto as Exhibit E. Pl.'s Dep. Tr. at 46.

87.   On or about December 10, 1996, Mr. Bontatibus, Jr. retained Attorney Richard Brown to represent him. Pl.'s Dep. Tr. at 47.

88.   By letter dated December 10, 1996, Attorney Richard R. Brown informed the Branford Police Department that, "should any law enforcement agency have reason to speak to my client, please do not contact him directly; rather make any request through me." Exhibit F (Brown letter to Carroll of 12/10/96); Pl.'s Dep. Tr. at 47.

89. A genuine copy of Attorney Brown's letter dated December 10, 1996 is attached hereto as Exhibit E. Pl.'s Dep. Tr. at 47.

90. Detective Ayr has been a duly certified police officer since approximately 1977. Ayr Aff., ¶82.

91. At all times relevant to the complaint in this action, Detective Ayr met all training requirements required by the Connecticut General Statutes in order to be a duly authorized police officer. Ayr Aff., ¶83; Exhibit G (Affidavit of Branford Police Chief Robert W. Gill of 10/29/04, ¶10) ("Gill Aff.").

92. At the time of the Department's investigation of the Fire, Robert W. Gill, the Town's current Police Chief, was the Deputy Police Chief. Gill Aff., ¶3.

93. As Deputy Police Chief, he also served as the Department's Training Officer. Gill Aff., ¶4.

94. Detective Ayr graduated from the Connecticut Police Academy on or about April 13, 1978. Gill Aff., ¶11.

95. He was last recertified as a police officer on July 1, 2002, and had met all his recertification requirements prior to that. Gill Aff., ¶12.

96. In order to obtain his recertification, he was required to attend forty-five (45) hours of training concerning firearms, rape crisis, human relations, police and the law, patrol procedures, domestic violence and electives. Gill Aff., ¶13.

97. In addition to the basic requirements mandated by the Police Officer Standards and Training Council ("POST"), Detective Ayr underwent, prior to the Fire investigation, the following additional training relevant to criminal investigations: basic crime scene investigation, intermediate crime scene investigation, fingerprint techniques, crime scene photography, crime scene video, advanced crime scene, physical significance of bloodstain evidence, advanced latent fingerprints, State's Attorney's law enforcement training program, and crime scene analyst. Gill Aff., ¶14.

98. Detective Ayr is one of Branford's finest Detectives and he has had a distinguished twenty-seven (27) year career with the Department. Gill Aff., ¶15.

99. The Branford Police Department relied on the expertise of the Office of the State Fire Marshal and the ATF to determine the cause and origin of the fire. Ayr Aff., ¶84; Gill Aff., ¶8-9.

100. At all times relevant to the complaint in this action, Detective Ayr acted in good faith to discharge his duties as police officer. Ayr Aff., ¶85.

101. Detective Ayr has known the Plaintiff for years, since the Plaintiff was active politically and owned a local business, and they have always had cordial relations. Ayr Aff., ¶86.

102. The Plaintiff's claim that there were numerous misrepresentations of fact contained in the Arrest Warrant Affidavit is basically limited to his claim that Detective Ayr exaggerated the amount of insurance. Pl.'s Dep. Tr. at 64, 90.

103. In his responses to the Defendants' First Set of Interrogatories, the Plaintiff was asked to provide the factual basis for his claim that the Town of Branford demonstrated a reckless indifference to the Plaintiff's constitutional rights and the Plaintiff responded as follows: "Please see Complaint, ¶19. Failure to properly train police officers and fire officials in conducting an investigation." Exihibit H (Pl.'s Resp. to Defs.' First Interrogs. & Req. for Produc. of Docs. of 3/29/04, No. 7.)

104. When asked to identify the facts that support the Plaintiff's claim that he was singled out for retaliation for the death of Edward Ramos, Plaintiff responded as follows: "No one else was arrested. The investigation started and ended with me. People who called police on their own to tell of smelling gas were never called back. No one else was questioned except my son." Id., No. 8.

105. When asked to identify the "numerous misrepresentations of fact" that the Plaintiff claims were contained in the Arrest Warrant Affidavit prepared by Detective Ayr, Plaintiff responded as follows: "Exaggeration of insurance, stated $800,000 in warrant. In actuality, it was approximately $240,000, including 5 vehicles." Id., No. 9.

        DEFENDANTS,
        DUNCAN AYR and TOWN OF BRANFORD


By:   /s/ James N. Tallberg
     JAMES N. TALLBERG, ESQ.
     Federal Bar Number Ct17849
     UPDIKE, KELLY & SPELLACY, P.C.
     One State St., P.O. Box 231277
     Hartford, CT 06123-1277
     Tel. No. (860) 548-2600
     jtallberg@uks.com


## CERTIFICATION

I hereby certify that on November 1, 2004, a copy of the foregoing was filed electronically. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system. Parties may access this filing thought the Court's system.

Norman A. Pattis, Esq.
Williams & Pattis, LLC
51 Elm Street, Suite 409
New Haven, CT 06510.


By:   /s/ James N. Tallberg
     JAMES N. TALLBERG, ESQ.
     Updike, Kelly & Spellacy, P.C.

377814