# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

------------------------------------------------------- :

ANTHONY BONTATIBUS             :     CIVIL ACTION NO. 3:03CV00948(JCH)

                             :

       Plaintiff,               :

                             :

V.                              :

                             :

DUNCAN AYR,               :

and TOWN OF BRANFORD      :

                             :

       Defendants.          :     APRIL 28, 2005

## DEFENDANTS' REPLY TO PLAINTIFF'S OBJECTION TO MOTION FOR SUMMARY JUDGMENT

Pursuant to Rule 56 of the Federal Rules of Civil Procedure and Local Rule 56(c), the defendants Duncan Ayr and the Town of Branford (the "Town") respectfully reply to the plaintiff's Memorandum in Opposition to Motion for Summary Judgment ("Plaintiff's Memorandum") filed on or about April 11, 2005.

## I.    The Plaintiff has Failed to Raise a Genuine Issue of Material Fact in Dispute

The plaintiff has essentially admitted all one hundred and five (105) undisputed material facts contained in Mr. Ayr's Local Rule 56(a)1 statement.  See Plaintiff's Local 56(a)2 Statement, admitting ¶¶1-8, 12-73, 77, 97, 99, 101-05.  The plaintiff failed to deny *any* of the undisputed material facts proffered by Mr. Ayr and the Town.  The few facts that the plaintiff refused to admit or deny; ¶¶9-11, 74-76, 98, and 100; are deemed admitted pursuant to Rule 56(a)1, which provides that, "[a]ll material facts set forth in said statement will be deemed admitted unless controverted by the

statement required to be filed and served by the opposing party in accordance with Local Rule

56(a)2." D. Conn. L. Civ. R. §56(a)1. Because the plaintiff has either admitted, or failed to

controvert, any of the undisputed material facts identified by Mr. Ayr and the Town, they are all

deemed admitted. Id.

**II.     Mr. Ayr is Entitled to Summary Judgment Because the Plaintiff Has Failed to Create a Genuine Dispute Regarding a Material Fact**

A plaintiff may challenge the issuance of a warrant by making a "substantial preliminary

showing that the affiant knowingly and intentionally, or with reckless disregard for the truth, made a

false statement in his affidavit and that the allegedly false statement was necessary to the finding of

probable cause." Zandhri v. Dortenzio, 228 F. Supp. 2d 167, 174 (D. Conn. 2002) (internal quotation

omitted); Franks v. Delaware, 438 U.S. 154, 155-56 (1978); Golino v. City of New Haven, 950 F.2d

864, 870 (2d Cir. 1991). "Allegations that amount to negligence or innocent mistake do not

constitute the required showing." US v. Markey, 131 F. Supp. 2d 316, 324 (D. Conn. 2001). "The

focus is not on whether a mistake was made, but rather on the intention behind the mistake." Id.

(citing Beard v. City of Northglenn, 24 F.3d 110, 116 (10th Cir. 1994)); see US v. Trzaska, 111 F.3d

1019, 1027 (2d Cir. 1997). "Franks does not require that all statements in an affidavit be true; it

simply requires that the statements be believed or appropriately accepted by the affiant as true."

Markey, 131 F. Supp. 2d at 324 (internal quotation marks omitted) (citing US v. Campino, 890 F.2d

588, 592 (2d Cir. 1989) and Franks, 438 U.S. at 165).

Here, the plaintiff's primary complaint against Mr. Ayr is that he allegedly misstated the

amount of insurance that the plaintiff had in place for his business on the date of the fire. See

Plaintiff's Memorandum at 3-4.  It is undisputed, however, that Mr. Ayr disclosed in the Arrest

Warrant Affidavit that the insurance coverage information was "according to Martin White, an agent

of the Hartford Insurance Company."  Undisputed Facts, ¶72.  The plaintiff has not presented a shred

of evidence to refute the fact that the insurance information relied upon by Mr. Ayr was provided by

the plaintiff's own insurer.  To the contrary, the plaintiff has demonstrated, by his own confusion

about how much insurance he had in place, that the incorrect information about his insurance

coverage is entirely understandable and not due to ill motive.[1]

The plaintiff never deposed Mr. Ayr, or any other any witness to this incident.  Thus, the

plaintiff is unable to meet his burden and he has not made a substantial preliminary showing that Mr.

Ayr "knowingly and intentionally, or with reckless disregard for the truth, made a false statement in

his affidavit and that the allegedly false statement was 'necessary to a finding of probable cause'."

Zandhri, 228 F. Supp. 2d at 174 (internal citations omitted).  In short, the plaintiff has failed to make

*any* showing of any alleged misstatements by Mr. Ayr that were done with a reckless disregard for

the truth.  The plaintiff's conclusory allegations about the amount of insurance coverage are simply

insufficient to meet his heavy burden.  Franks, 438 U.S. at 171; US v. Akinkoye, 185 F.3d 192, 198

(4th 1999).

---

[1] For example, the plaintiff has given contradictory answers regarding the amount of insurance he had in place on the date of loss, saying both that it was insured for "approximately $240,000" and that it was insured for $124,000.  Compare Plaintiff's Dep. Tr. at 96-97 with Plaintiff's discovery responses (Exhibit H, No. 11).  Similarly, although the plaintiff claims he told someone in law enforcement that the value of the insurance policy was approximately $125,000, he has sworn that he does not recall discussing this with Mr. Ayr.  See Affidavit of Anthony Bontatibus of 2/27/05, ¶¶8-9. Therefore, that $125,000 figure cannot fairly be imputed to Mr. Ayr.

Even if the Court were to find a misrepresentation regarding the amount of insurance sufficient to undermine the warrant, there was still probable cause. "To determine if the false information was necessary to the issuing judge's probable cause determination, i.e., material 'a court should disregard the allegedly false statements and determine whether the remaining portions of the affidavit would support probable cause to issue the warrant.'" US v. Canfield, 212 F.3d 713, 718 (2d Cir. 2000) (quoting US v. Salameh, 152 F.3d 88, 113 (2d Cir. 1998)). "If the corrected affidavit supports probable cause, the inaccuracies were not material to the probable cause determination and suppression is inappropriate. As with the inclusion of false information, 'omissions from an affidavit that are claimed to be material are governed by the same rules.'" Id. (quoting US v. Ferguson, 758 F.2d 843, 848 (2d Cir. 1985)). "The ultimate inquiry is whether, after putting aside erroneous information and material omissions, there remains a residue of independent and lawful information sufficient to support probable cause." Id. (internal quotations and citations omitted).

The amount of insurance is the only factual statement in the entire ten page, single-spaced, twenty-seven paragraph arrest warrant affidavit that the plaintiff even attempts to undermine. As demonstrated above, the amount of insurance coverage cannot be credibly attacked since Mr. Ayr disclosed in his affidavit that he was relying on information provided to him by Mr. White of the Hartford Insurance Company. See Arrest Warrant Affidavit of 3/7/97, ¶26. Although that insurance information later turned out to be incorrect, there was still ample probable cause for the plaintiff's arrest based on the cause and origin reports prepared by the Office of the State Fire Marshall, the Bureau of Alcohol, Tobacco and Firearms, and the State's Attorney's Office.

The plaintiff's argument that, "but for the overstatement of the financial gain, there would have been little to support the arrest of the plaintiff," is untenable.  See Plaintiff's Memorandum at 5. The information about insurance is contained in one sentence in a ten page affidavit.  See Arrest Warrant Affidavit of 3/7/97, ¶26.  The amount of insurance coverage in place on the date of loss was cumulative of the other compelling evidence that pointed to arson, including but not limited to:  the cause and origin investigations conducted by the Office of the State Fire Marshal and the Bureau of Alcohol, Tobacco and Firearms; the analysis of burn patterns; the tests conducted on the gas lines and apparatus; the interviews of approximately 40 witnesses; the analysis of the plaintiff's tax indebtedness and his financial troubles; and the statements of the plaintiff and his son, including the inculpatory statements that the plaintiff had been at the premises shortly before the fire started.

Even if the court conducts a Franks analysis and disregards the allegedly false statements about insurance coverage, the remaining ten pages of Mr. Ayr's affidavit continue to support a finding of probable cause sufficient to issue the warrant.  See e.g. Canfield, 212 F.3d at 718. Whether there was $100,000, or $1,000,000 in insurance, all evidence still pointed directly to the plaintiff having committed arson.  Ayr Aff., ¶¶79.  Since the "corrected" affidavit supports probable cause, the only alleged inaccuracy was not material to the probable cause determination.  Therefore, Mr. Ayr had probable cause to arrest the plaintiff, which is a complete defense to the plaintiff's claim and he is entitled to summary judgment.

III.    **Mr. Ayr is Entitled to Qualified Immunity Because at the Very Least He Had Arguable Probable Cause for the Plaintiff's Arrest**

Even if the Court concludes that there was not probable cause, a proposition that Mr. Ayr disputes, he is still entitled to qualified immunity because at the very least he had *arguable probable cause* for the plaintiff's arrest. A "police officer is entitled to qualified immunity shielding him or her from a claim for damages for false arrest where (1) it was objectively reasonable for the officer to believe that there was probable cause to make the arrest, or (2) reasonably competent police officers could disagree as to whether there was probable cause to arrest." Riccuiti v. New York City Transit Auth., 124 F.3d 123, 128 (2d Cir. 1997) (citing Golino v. City of New Haven, 950 F.2d 864, 870 (2d Cir. 1991). As this very Court held in Colon v. Ludemann, 283 F. Supp. 2d 747, 761-62 (D. Conn. 2003), even where a warrant does not provide probable cause an officer will still be protected by the doctrine of qualified immunity where "a reasonable officer in the same circumstances and possessing the same knowledge as the officer in question could have reasonably believed that probable cause existed in light of well established law" (internal citations omitted).

Although Mr. Ayr may not have "explore[d] and eliminate[d] every theoretically plausible claim of innocence before making an arrest," the law does not require him to do so in order for the defense of qualified immunity to apply. Id., see also Cerrone, 246 F.3d at 203. Mr. Ayr has easily established that, at the very least, there was arguable probable cause for the plaintiff's arrest such that reasonably competent officers could disagree. Therefore, Mr. Ayr is entitled to qualified immunity and should be granted summary judgment.

**IV.** **The Town of Branford is Entitled to Summary Judgment Because the Plaintiff Failed to Show "Deliberate Indifference"**

The plaintiff's claim that the Town should be held liable is apparently premised upon the argument, unsupported by any controlling case law, that the Town was deliberately indifferent to the rights of persons with whom the Branford police come in contact because an insurance investigator, Don Barry, was permitted access to the crime scene. Plaintiff's Memorandum at 5-7. Plaintiff's reliance for this claim on <u>Amnesty America v. Town of West Hartford</u>, 361 F.3d 113, 129 (2d Cir. 2004), is misplaced. In <u>Amnesty America</u>, the Second Circuit affirmed the District Court's grant of summary judgment regarding the plaintiff's failure to train claim because the "[p]laintiffs here have proffered no evidence of the Town's training programs or advanced any theory as to how a training deficiency caused police officers to use excessive force . . ." 361 F. 3d at 130. The Second Circuit reversed the defendants' summary judgment on the narrow issue of failure to supervise because the plaintiffs provided affidavits in which they swore that the police chief was present at anti-abortion protests and that his witnessing of alleged acts of brutality created a factual dispute concerning whether this constituted "deliberate indifference," which required a trial. <u>Id.</u> at 128.

In this case, the plaintiff has produced no evidence regarding a deficient training program, nor has he offered a scintilla of evidence that would show any municipal decision maker was on notice of any deficiencies regarding crime scene integrity that could possibly support a "deliberate indifference" claim. Furthermore, the plaintiff's argument that, "the Town of Branford permitted an agent of entity [sic] with a financial outcome in the outcome [sic] of the investigation to have unlimited access to the crime scene;" Plaintiff's Memorandum at 5; is defeated by the very transcript

submitted with the Plaintiff's Objection.  <u>See</u> Testimony of William Lewis of 2/25/04 at 46 ("I asked Don Barry not to go in the back area because there was gasoline obviously from the vehicles in there and I didn't want it to be tracked and contaminated throughout the rest of the building;" <u>id.</u> at 101 "it was concern for his safety and also to make sure that nothing was contaminated;" and at 175 (discussing other limitations placed on Mr. Barry at the crime scene)).

Contrary to the plaintiff's argument, Mr. Barry was <u>not</u> given unlimited access to the crime scene.  The undisputed evidence submitted by the plaintiff reveals that Mr. Barry's access was limited and that the State Fire Investigator, Mr. Lewis, was mindful of protecting the integrity of the crime scene.  Lewis Testimony at 46, 101, 175.  Moreover, Mr. Barry's limited presence at the scene had no bearing, or causal relationship, to the charges that were lodged against the plaintiff.  The plaintiff's failure to train claim, unsupported by any evidence that would show "deliberate indifference," cannot be sustained and should be summarily disposed.

DEFENDANTS,
DUNCAN AYR and TOWN OF BRANFORD


By:____/s/ James N. Tallberg_____
    JAMES N. TALLBERG, ESQ.
    Federal Bar Number Ct17849
    UPDIKE, KELLY & SPELLACY, P.C.
    One State St., P.O. Box 231277
    Hartford, CT 06123-1277
    Tel. No. (860) 548-2600
    jtallberg@uks.com

## **CERTIFICATION**

THIS IS TO CERTIFY that a copy of the foregoing, has been sent via U.S. certified mailed,

postage prepaid, and by email, this ___ day of April, 2005, to the following parties:

Norman A. Pattis, Esq.
Law Offices of Norman A. Pattis, LLC
649 Amity Road
Bethany, CT 06524

By:____/s/ James N. Tallberg_____
    JAMES N. TALLBERG, ESQ.
    Updike, Kelly & Spellacy, P.C

396497

9