UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| ANTHONY BONTATIBUS,<br>    Plaintiff | :<br>:<br>: |
| v. | :   CIVIL ACTION NO.<br>:   3-03-cv-948 (JCH) |
| DUNCAN AYR and TOWN OF<br>BRANFORD,<br>    Defendants. | :<br>:<br>:<br>: |
| | :   AUGUST 25, 2005 |

**RULING ON DEFENDANTS'**
**MOTIONS FOR SUMMARY JUDGMENT [DOC. NO. 15]**

Plaintiff Anthony Bontatibus filed this action on May 28, 2003, alleging violations of his civil rights by an officer of the Branford Police Department and by the Town of Branford. The Complaint alleges that the individually named defendant, Duncan Ayr, violated Bontatibus's civil rights by maliciously prosecuting him for crimes related to a fire on November 28, 1996 at 43 School Ground Road, the location of his business, Bontatibus Floors and More. All defendants now move for summary judgment on the following grounds: (1) the arrest and prosecution of Bontatibus was supported by probable cause; (2) Ayr is shielded by the doctrine of qualified immunity; and (3) Bontatibus has failed to provide evidence to support a claim of municipal liability.

**I.   FACTS**

The facts are viewed in the light most favorable to non-moving party, the plaintiff. Bontatibus owned a business, called Bontatibus Floors & More, located at 43 School Ground Road in Branford, Connecticut. On November 28, 1996, at approximately 4:24

p.m., Branford emergency services received a 911 call reporting a fire at 43 School Ground Road.  Firefighters responded to the scene.  One firefighter, Edward Ramos, died in the efforts to put out the fire.  The Branford Police Department, Office of the State Fire Marshal, the New Haven State's Attorney's Office, and the Bureau of Alcohol, Tobacco, and Firearms ("ATF") participated in the investigation of the fire.  Reports on the investigation were produced by investigators from the State Fire Marshal as well as the ATF.  The Police Department's investigation included interviews with approximately forty witnesses, including Bontatibus and his son.

     The November 28, 1996 written statement taken from Bontatibus by the Branford Police Department provided as follows.  Bontatibus stated that approximately two weeks prior, he had struck a gas-operated overhead heater while operating a forklift.  The accident resulted in a broken pipe and gas spillage.  Bontatibus stated that he called the local gas company which sent a technician who turned off the gas meter and took recordings which showed a concentration of gas in the ceramic room, adjacent to the room in which the accident took place.  Bontatibus and the technician opened all of the doors and Bontatibus remained at the store until 3 a.m. in order to allow the store to air out.  He claimed to continue to smell the odor of gas and, the next day, he called Quality Plumbing, which sent a plumber who capped the gas pipe.  A week later, approximately a week prior to the fire, Bontatibus claimed to smell the gas odor again and turned off the gas meter himself.  He again called Quality Plumbing.  The plumber noted a crack in the furnace in the ceramic room and recommended that it be replaced but advised that it could continue to be operated.  Bontatibus then stated that on the morning of the fire, around 9 a.m., his son had smelled gas at the store.  Bontatibus

met his son at the store and shut the gas off.  He then opened all of the doors and remained there with the doors open until about 11:30 a.m.  At 2:45 p.m., he returned to the store.  He noticed the faint odor of gas and again opened all of the doors and remained at the store until about 3:40 or 3:45 p.m., at which time he went home.

Law enforcement personnel found no evidence of burglary at the store.  The Fire Marshal's Office concluded that the fire started in the kitchen, on the north side of the building and eliminated the possibility that ignition or heat sources, like natural gas or electricity, started the fire.  Employees of the Southern Connecticut Natural Gas Company tested the gas line between the building and the street and found no gas leaks.  The Fire Marshall's Office concluded that the floor of the kitchen and the ceramic room exhibited an unusual burn pattern generally found at fire scenes where an ignitable liquid has been poured in order to speed the spread of fire.  Forensic testing revealed the presence of medium boiling range petroleum distillate, a flammable liquid, at the scene.  Based on these factual findings, the investigator from the State Fire Marshal's Office concluded that the fire was intentionally set.  The investigator from the ATF concurred.

Forensic fraud examiners for the State of Connecticut Division or Criminal Justice examined records seized from Bontatibus and his business.  Their investigation indicated a decline in sales, over $60,000 owed in back taxes to federal government, and over $20,000 in back taxes owed to the State of Connecticut.

On March 7, 1997, Ayr, a member of the Branford Police Department, signed an affidavit in support of an Application for Arrest Warrant.  The affidavit described the investigation and included relevant information from interviews with Bontatibus and his

3

son as well as a number of other witnesses, including individuals from Southern Connecticut Gas Company and Quality Plumbing.  That warrant was signed by Connecticut Superior Court Judge Robert J. Devlin on March 7, 1997.

Bontatibus admits the majority of facts iterated in the affidavit.  At ¶ 26 of his Affidavit, however, Ayr states the following: "That insurance records indicate that Bontatibus Floors & More is insured by the Hartford Insurance Company and according to Martin White, an agent of the Hartford Insurance Company, Bontatibus Floors & More was insured for $300,000 for its contents and $500,000 for business interruption."  Application for Arrest Warrant, [Doc. 17, Ex. A17] at ¶ 26.  This information, both parties agree, was incorrect.  Bontatibus claims to have told law enforcement officers that the value of the insurance policy for his business was approximately $125,500.  He further claims that the time of the fire, the business had debt of $150,000 and sufficient accounts receivable to cover foreseeable operating expenses.

## II. DISCUSSION

### A. Standard

In a motion for summary judgment, the burden is on the moving party to establish that there are no genuine issues of material fact in dispute and that it is entitled to judgment as a matter of law.  See Fed. R. Civ. P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986); White v. ABCO Eng'g Corp., 221 F.3d 293, 300 (2d Cir. 2000).  A court must grant summary judgment "'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact . . . .'"  Miner v. Glen Falls, 999

F.2d 655, 661 (2d Cir. 1993) (citation omitted).  A dispute regarding a material fact is genuine "'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"  Aldrich v. Randolph Cent. Sch. Dist., 963 F.2d 520, 523 (2d Cir. 1992) (quoting Anderson, 477 U.S. at 248), cert. denied, 506 U.S. 965 (1992).  After discovery, if the nonmoving party "has failed to make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof," then summary judgment is appropriate.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  When a motion for summary judgment is supported by documentary evidence and sworn affidavits, the nonmoving party "may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial."  Fed. R. Civ. P. 56(e); see also Anderson, 477 U.S. at 256 (1986).  The nonmoving must present "significant probative evidence to create a genuine issue of material fact."  Soto v. Meachum, Civ. No. B-90-270 (WWE), 1991 WL 218481, at *6 (D. Conn. Aug. 28, 1991).  Further, a party may not rely "on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment."  Knight v. U.S. Fire Ins. Co., 804 F.2d 9, 12 (2d Cir. 1986), cert. denied, 480 U.S. 932 (1987).

  The court resolves "all ambiguities and draw[s] all inferences in favor of the nonmoving party in order to determine how a reasonable jury would decide."  Aldrich, 963 F.2d at 523.  Thus, "[o]nly when reasonable minds could not differ as to the import of the evidence is summary judgment proper."  Bryant v. Maffucci, 923 F.2d 979, 982 (2d Cir.), cert. denied, 502 U.S. 849 (1991).  See also Suburban Propane v. Proctor

Gas, Inc., 953 F.2d 780, 788 (2d Cir. 1992). A party may not create a genuine issue of material fact by presenting contradictory or unsupported statements. See Securities & Exchange Comm'n v. Research Automation Corp., 585 F.2d 31, 33 (2d Cir. 1978). Nor may he rest on the "mere allegations or denials" contained in his pleadings. Goenaga v. March of Dimes Birth Defects Found., 51 F.3d 14, 18 (2d Cir. 1995). See also Ying Jing Gan v. City of New York, 996 F.2d 522, 532 (2d Cir. 1993) (holding that party may not rely on conclusory statements or an argument that the affidavits in support of the motion for summary judgment are not credible).

**B.    Probable Cause**

The defendants argue that the plaintiff has failed to assert sufficient facts to create a question of material fact with respect to the existence of probable cause to support his arrest and prosecution.

"It is settled that a person has a clearly established right not to be arrested of prosecuted without probable cause." Soares v. State of Connecticut, 8 F.3d 917, 920 (2d Cir. 1993), "To establish a claim for false arrest under 42 U.S.C. § 1983, a plaintiff must show that 'the defendant intentionally confined him without his consent and without justification.'" Escalera v. Lunn, 361 F.3d 737, 743 (2d Cir. 2004), quoting Weyant v. Okst, 101 F.3d 845, 852 (2d Cir.1996). "Because probable cause to arrest constitutes justification, there can be no claim for false arrest where the arresting officer had probable cause to arrest the plaintiff." Escalera, 361 F.3d at 743. A lack of probable cause is also a necessary element in a section 1983 claim for malicious prosecution. In the Second Circuit, the elements of a section 1983 claim for malicious prosecution in violation of the Fourth Amendment are borrowed from state common

6

law.  Singer v. Fulton County Sheriff, 63 F.3d 110, 114 (2d Cir. 1995).  In Connecticut, one of three elements of the common law tort of malicious prosecution, in the case of criminal prosecution, or vexatious litigation, in the case of civil litigation, is a lack of probable cause.  Vandersluis v. Weil, 176 Conn. 353, 356 (1978).  "To establish either cause of action, it is necessary to prove want of probable cause, malice and a termination of suit in the plaintiff's favor." Id. (internal citations omitted).  The Second Circuit has held that a prosecution resulting in a hung jury cannot support a claim for malicious prosecution.  Singleton v. City of New York, 632 F.2d 185, 195 (2d Cir. 1980) ("A prosecution based on probable cause which results in a hung jury, as was the case here, does not deprive the defendant of civil rights within the meaning of § 1983").

If there is no question of material fact that probable cause to arrest and prosecute Bontatibus existed, summary judgment must enter for the defendants.  The facts offered by the defendants and supported by affidavits and admissible exhibits support a finding that more than sufficient probable cause existed to arrest and prosecute Bontatibus.  "[P]robable cause to arrest exists when the officers have knowledge or reasonably trustworthy information of facts and circumstances that are sufficient in themselves to warrant a person of reasonable caution in the belief that (1) an offense has been or is being committed (2) by the person to be arrested."  United States v. Fisher, 702 F.2d 372, 375 (2d Cir. 1983).  Because he was arrested pursuant to a facially valid arrest warrant, Bontatibus must "rebut the presumption of probable cause created by the issuance of the arrest warrant."  Artis v. Liotard, 934 F.Supp. 101, 103 (S.D.N.Y. 1996); see also Simms v. Village of Albion, N.Y., 115 F.3d 1098 (1997).  "A plaintiff can demonstrate that [his right not to be prosecuted without probable cause]

7

was violated where the officer submitting the probable cause affidavit 'knowingly and intentionally, or with reckless disregard for the truth, made a false statement in his affidavit' or omitted material information, and that such false or omitted information was 'necessary to the finding of probable cause.'" Soares, 8 F.3d at 920 (quoting Golino v. City of New Haven, 950 F.2d 864, 870-71 (2d Cir. 1991), cert. denied, 505 U.S. 1221 (1992). Where "the omitted information [is] shown to be material and necessary to a finding of probable cause," Simms, 115 F.3d at 1107, there will be no presumption that an arresting officer acted in good faith.

"Probable cause to arrest exists under federal law 'when the authorities have knowledge or reasonably trustworthy information sufficient to warrant a person of reasonable caution in the belief that an offense has been committeed by the person to be arrested." Smith v. Edwards, 175 F.3d 99, 106 (2d Cir. 1999). "Similarly, under Connecticut state law, probable cause 'comprises such facts as would reasonably persuade an impartial and reasonable mind not merely to suspect or conjecture, but to believe that criminal activity has occurred." Id. (quoting State v. Barton, 219 Conn. 529, 594 (1991)). Bontatibus does not dispute any fact iterated in the defendants' Local Rule 56(a)(1) statement. Bontatibus must "designate 'specific facts showing that there is a genuine issue for trial.' " Id. (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). Because he fails to do so, the court finds that there is no genuine issue of material fact in dispute. Therefore, summary judgment is appropriate.

Further, the facts before the court provide ample support for a finding that probable cause existed to arrest and prosecute Bontatibus. The defendants conducted

a thorough investigation which included interviews of approximately forty witnesses. Indeed, because he was arrested pursuant to a facially valid warrant, there is a presumption that the arrest was made with probable cause.

The court considers Bontatibus' allegation that Ayr's probable cause affidavit omitted material facts which would have mitigated against a probable cause finding. No violation of a person's Fourth Amendment rights has occurred where the affidavit "would have supported a finding of probable cause" even where the court "put[s] aside allegedly false material [and] suppl[ies] any omitted information." Soares, 8 F.3d at 920; see also Escalera v. Lunn, 361 F.3d 737, 743-44 (2d Cir. 2004). Had Ayr included the actual value of the insurance policy ($586,000) and omitted the estimate received from Martin White ($800,000), the probable cause calculus would be scarcely different. Under those circumstances, there remained ample evidence, undisputed by Bontatibus, that the fire was caused by arson and that a substantial insurance policy provided motive for Bontatibus to commit the arson, even if the actual value of the policy may have been somewhat, though certainly not significantly, less than that stated in the affidavit.

C.    **Municipal Liability**

Because Bontatibus's claims against the Ayr cannot survive the motion for summary judgment, the court need not consider the question of whether the Town of Branford may be liable for the Ayr's actions. Bontatibus further claimed that the Town is liable because it demonstrated deliberate indifference to his rights by allowing an insurance investigator access to the crime scene. This claim cannot survive the town's motion for summary judgment for two reasons. First, Bontatibus fails to point to any

evidence that an injury resulted from the alleged access by the insurance investigator to the crime scene. Second, Bontatibus has failed to provide any evidence to support a finding that the Town of Branford had a policy regarding access to crime scenes or that a failure to train municipal personnel resulted in a private individual's access to the crime scene. See Monell v. Dep't of Social Services, 436 U.S. 658 (1978). Therefore, the court grants summary judgment to the Town of Branford on his claim.

### III.    CONCLUSION

For the reasons discussed above, the defendants' motion for summary judgment is GRANTED.

**SO ORDERED**

Dated at Bridgeport, Connecticut this 25th day of August, 2005.


/s/ Janet C. Hall
Janet C. Hall
United States District Judge